# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 938 | **DATE** | 3/16/2004 |
| **CASE TITLE** | Fox River Graphics, Inc. vs. First Midwest Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [15-1] is denied. Defendant Seoul Bank for summary judgment [10-1] is granted. Judgment entered in favor of Seoul Bank.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 3/17/04 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 16 |
| ✓ | Mail AO 450 form. Mailed by MD. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/16/2004 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FOX RIVER GRAPHICS, INC., an Illinois corporation,

    Plaintiff,

vs.

FIRST MIDWEST BANK, an Illinois banking association, and HANA BANK, as successor in interest to Seoul Bank,

    Defendants.

No. 03 C 0938
Judge Joan H. Lefkow

MAR 17 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Fox River Graphics, Inc., an Illinois corporation ("Fox River"), brings this action against Hana Bank, as successor in interest to Seoul Bank ("Seoul Bank"), alleging violation of Federal Regulation CC, 12 C.F.R. pt. 229 (Count V), and violation of sections 4-301 and 4-302 of the Uniform Commercial Code ("UCC") (Count VI).[1] Before the court are the parties' cross-motions for summary judgment. For the reasons set forth below, Fox River's motion is denied while Seoul Bank's motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and

---

[1] Counts I-IV were brought against First Midwest Bank, an Illinois banking association ("First Midwest"). On April 3, 2003, Fox River's motion to voluntarily dismiss First Midwest as a defendant without prejudice was granted. First Midwest was dismissed as a defendant pursuant to a Tolling Agreement it entered into with Fox River.

assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, the court must consider the merits of each motion and assess the burden of proof that each party would bear on an issue at trial. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## FACTS[2]

Fox River is an Illinois corporation engaged in the business of supplying LCD projectors. (Stip. Facts ¶ 1.) On February 4, 2002, Fox River received a bank draft (the "Draft") in the amount of $95,388.00 from P.C. Tradelink Corp. ("Tradelink"), a Korean corporation, for the

---

[2] The facts as set forth herein are taken from two sources: (1) the parties stipulation of uncontested material facts and (2) Seoul Bank's statement of material facts in support of its motion for summary judgment. The facts in Seoul Bank's statement of material facts are deemed admitted because Fox River did not present a response. *See* Local Rule 56.1(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

purchase of $63,573.00 worth of LCD Projectors. (Stip. Facts ¶ 8.) Tradelink explained the difference of $31,815.00 as a mistake, and requested that Fox River return that amount after the Draft had cleared. (Stip. Facts ¶ 9.) The Draft was allegedly drawn on the Pusan Branch of Seoul Bank, payable to the order of Fox River, and payable at Seoul Bank, New York Branch. (Stip. Facts ¶ 10.)

According to the first date stamp on the back of the Draft, Fox River deposited the Draft in its account at First Midwest on February 4, 2002. (Stip. Facts ¶ 11.) According to the second date stamp on the back, First Midwest presented the Draft to the Chicago Federal Reserve Bank (the "Chicago FRB") for clearing on February 5, 2002. (Stip. Facts ¶ 12.)

On February 11, 2002, the New York Federal Reserve Bank (the "New York FRB") debited Seoul Bank's FRB account #36003262 in the amount of $122,326.18. (Stip. Facts ¶ 13.) In an envelope Seoul Bank received from the New York FRB, however, all that was contained was a single check in the amount of $26,938.18. (Def. L.R. 56.1 ¶ 20.) The balance of $95,388.00 was left unexplained. (*Id.*)

First Midwest notified Fox River that the Draft cleared on February 11, 2002. (Stip. Facts ¶ 14.) After receiving this notification, on the same day Fox River authorized a wire transfer in the amount of $31,815.00 from its account at First Midwest to Tradelink. (Stip. Facts ¶ 15.)

On February 12, 2002, Seoul Bank requested that the New York FRB credit its account in the amount of the unexplained debit of $95,388.00. (Def. L.R. 56.1 ¶ 25.) On February 14, 2002, Seoul Bank received the Draft by pouch from the New York FRB, and its account with the FRB was again debited in the amount of $95,388.00. (Stip. Facts ¶ 16.) Within 24 hours of

receipt of the Draft, on February 24, 2002, Seoul Bank returned the Draft, marked as counterfeit, to the New York FRB by hand at 1:36 p.m. (Stip. Facts ¶ 17.) The Transmittal Letter to the New York FRB states "for settlement on the next business day." (Stip. Facts ¶ 18.) Also on February 15, 2002, the New York FRB credited Seoul Bank's account in the amount of $95,388.00 pursuant to its request of February 12, 2003. (Stip. Facts ¶ 19.) On February 19, 2003, the New York FRB again credited Seoul Bank's account in the amount of $95,388.00 pursuant to its return of the Draft on February 15, 2002. (Stip. Facts ¶ 20.)

First Midwest did not receive notice of the dishonored check until it received the Draft on February 22, 2002 from the Chicago FRB. (Stip. Facts ¶ 21.) Seoul Bank and First Midwest are located in separate checking regions in the United States. (Stip. Facts ¶ 29.)

## DISCUSSION

Before addressing the parties' cross-motions for summary judgment, the court pauses for a brief moment to explore its jurisdiction over this action. Fox River's Complaint alleges that this court's jurisdiction is invoked pursuant to both 28 U.S.C. §§ 1331 and 1332. At least at the time this suit was filed no diversity jurisdiction could have been present, as Fox River and Midwest are both identified as citizens of Illinois.[3] And diversity jurisdiction would not appear present now between Fox River and Seoul Bank because Fox River claims damages in the amount of $31,815.00, well below the $75,000 diversity threshold.

Fox River does, however, allege violation of Federal Regulation CC, 12 C.F.R. pt. 229. Regulation CC was implemented by the Federal Reserve Board under the Expedited Funds

---

[3] Fox River is identified as a Illinois corporation and, although its principal place of business is not listed, the court infers that it would also be in Illinois. (Compl. ¶ 2.) First Midwest is listed as an "Illinois banking association" with its principal place of business in Itasca, Illinois. (Compl. ¶ 3.)

4

Availability Act, 12 U.S.C. §§ 4001-4010 ("EFA"). *See Bank One Chicago v. Midwest Bank & Trust Co.*, 516 U.S. 264, 268 (1996). Subsection 4010(a) of the EFA provides that

> Except as otherwise provided in this section, any depository institution which fails to comply with any requirement imposed under this chapter or any regulation prescribed under this chapter with respect to any person other than another depository institution is liable to such person in an amount equal to the sum of [a specified measure of damages.]

*Bank One Chicago, N.A.*, 516 U.S. at 267 (bracket in original) (citing 12 U.S.C. § 4010(a)).

Moreover, subsection 4010(d) of the EFA provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year after the date of occurrence of the violation involved." 12 U.S.C. § 4010(d).[4]

Accordingly, this court is satisfied that its federal question jurisdiction is invoked under 28 U.S.C. § 1331.

Fox River maintains that Seoul Bank violated two subparts of Regulation CC. First, Fox River claims that Seoul Bank violated 12 C.F.R. § 229.30, which provides in pertinent part,

> (a) Return of checks. If a paying bank determines not to pay a check, it shall return the check in an expeditious manner as provided in either paragraph (a)(1) or (a)(2) of this section.
> (1) Two-day/four-day test. A paying bank returns a check in an expeditious manner if it sends the returned check in a manner such that the check would normally be received by the depositary bank not later than 4:00 p.m. (local time of the depositary bank) of--
> \*\*\*
> (ii) The fourth business day following the banking day on which the check was presented to the paying bank, if the paying bank is not located in the same check processing region as the depositary bank.
> If the last business day on which the paying bank may deliver a returned check to the depositary bank is not a banking day for the depositary bank, the paying bank

---

[4]Subpart C of Regulation CC, which is the relevant subsection to this action, repeats the jurisdictional provision contained in § 4010(d) and states that there is "concurrent federal-court and state-court jurisdiction over '[a]ny action under this subpart.'" *Bank One Chicago N.A.*, 516 U.S. at 268 (citing 12 C.F.R. § 229.38(g)).

5

meets the two-day/four-day test if the returned check is received by the depositary
bank on or before the depositary bank's next banking day.

According to Fox River, there is no dispute that Seoul Bank received the Draft on February 14, 2002. Therefore, because the two banks were in different processing regions, Fox River believes that Seoul Bank had to return the check to First Midwest by 4:00 p.m. on February 21, 2002, which would have been four business days after the date the Draft was presented to Seoul Bank.

Fox River also argues that § 229.33 has been violated. That subsection provides in pertinent part,

> (a) Requirement. If a paying bank determines not to pay a check in the amount of $2,500 or more, it shall provide notice of nonpayment such that the notice is received by the depositary bank by 4:00 p.m. (local time) on the second business day following the banking day on which the check was presented to the paying bank. If the day the paying bank is required to provide notice is not a banking day for the depositary bank, receipt of notice on the depositary bank's next banking day constitutes timely notice. Notice may be provided by any reasonable means, including the returned check, a writing (including a copy of the check), telephone, Fedwire, telex, or other form of telegraph.

Fox River maintains that this subsection required Seoul Bank to give First Midwest the required notice by reasonable means by 4:00 p.m. on February 19, 2002. According to Fox River, because it is undisputed that such notice was not given, Seoul Bank violated § 229.33.

Starting with the alleged violation of § 229.30, violation of this regulation is not as clear as Fox River suggests. It is undisputed (1) that Seoul Bank received the Draft on February 14, 2002; (2) that four business days after that date was February 21, 2002; and (3) that First Midwest did not receive notice of the dishonored Draft until February 22, 2002. The regulation, however, is not automatically violated if the check is not returned by the fourth day. Instead, a violation only takes place when a paying bank (such as Seoul Bank) fails to return a check in an

"expeditious manner," which is defined as "in a manner such that the check would *normally* be received by the depositary bank not later than 4:00 p.m." on the fourth business day following when the check was presented to the paying bank. (Emphasis added). When a paying bank uses an expeditious manner of delivery as defined in the regulation, no violation would exist if, by some circumstance, the check was not actually delivered by the required date.

Neither side spends a great deal of time discussing the issue of whether Seoul Bank returned the Draft in an expeditious manner, although it certainly appears that it did. Seoul Bank returned the Draft, marked as counterfeit, to the New York FRB within 24 hours of receipt. In addition, the Federal Reserve Bank rules allow a depositary bank such as First Midwest to dispute a return when it believes the paying bank returned a check late. (*See* Def. Ex. 14, § 18.4.) First Midwest did file a "Claim of Late Return," which the FRB rejected based on Seoul Bank's response. (Def. L.R. 56.1 ¶ 8.)

Nevertheless, regardless of whether § 229.30 has, in fact, been violated, it is beyond any real dispute that Seoul Bank did not provide the notice required under § 229.33. Under this regulation, if a paying bank determines not to pay a check of $2,500 or more (which this Draft clearly was), it was required to provide notice of dishonor by reasonable means "on the second business day following the banking day on which the check was presented to the paying bank." In this case, that date was February 19, 2002. There was no notice of dishonor provided to First Midwest by February 19, 2002.

Seoul Bank, however, points to another subsection of Regulation CC in support of its argument that even if it did violate § 229.33 it is not liable to Fox River for any damages. Subsection 229.38 provides,

> A bank shall exercise ordinary care and act in good faith in complying with the requirements of this subpart. A bank that fails to exercise ordinary care or act in good faith under this subpart may be liable to the depositary bank, the depositary bank's customer, the owner of a check, or another party to the check. The measure of damages for failure to exercise ordinary care is the amount of the loss incurred, up to the amount of the check, reduced by the amount of the loss that party would have incurred even if the bank had exercised ordinary care. A bank that fails to act in good faith under this subpart may be liable for other damages, if any, suffered by the party as a proximate consequence. Subject to a bank's duty to exercise ordinary care or act in good faith in choosing the means of return or notice of nonpayment, the bank is not liable for the insolvency, neglect, misconduct, mistake, or default of another bank or person, or for loss or destruction of a check or notice of nonpayment in transit or in the possession of others. This section does not affect a paying bank's liability to its customer under the U.C.C. or other law.

Seoul Bank submits that even assuming it violated § 229.33, it is undisputed that notice under that subsection was to be provided by 4:00 p.m. on February 19, 2002. As Seoul Bank persuasively points out, the undisputed facts show that Fox River authorized its wire transfer in the amount of $31,815.00 from its account at First Midwest on February 11, 2002, three days before Seoul Bank received the Draft and eight days before it was required to give the notice provided in § 229.33(a). Indeed, Seoul Bank illustrates that even if it had received the draft on February 11, 2002, under § 229.33(a) it would have had until February 13 to notify First Midwest of dishonor, and this was still two days after the funds were wire transferred. Thus, Seoul Bank argues that even had it exercised reasonable care, nothing that it did caused the damages to Fox River and, therefore, § 229.38 should be invoked.

Based on the undisputed facts, and because § 229.38 reduces liability "by the amount of the loss that party would have incurred even if the bank had exercised ordinary care," Seoul Bank's argument is persuasive. Even if it had provided the required notice under § 229.33 on February 19, Fox River had already been told that the Draft had cleared and already had

8

authorized a wire transfer to Tradelink in the amount of $31,815.00. These facts fit the language of § 229.38 to a tee. Fox River, nonetheless, weakly suggests that it would have had an easier time tracking down its lost money had it been given the notice required under the regulations. The court, however, finds no persuasive value in this argument. Even if Seoul Bank had exercised ordinary care, the damages Fox River claims here would have still resulted. Liability for Fox River's damages, therefore, lies elsewhere, and the court need not speculate on who might be responsible. Seoul Bank's motion for summary judgment on the Count V claim is granted.

Finally, the court need not spend long on Fox River's Count VI claim brought under the UCC which, in any event, Fox River appears to have abandoned in its briefing. In its Complaint Fox River maintains that Seoul Bank violated §§ 4-301 and 4-302 of the UCC because it failed to give notice of dishonor to First Midwest and Fox River prior to the running of the UCC's deadline concerning notice of dishonor. The deadline for a bank to give such notice of dishonor is "midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." U.C.C. § 4-104(a)(10). Section 4-301(a) permits a paying bank to revoke a settlement and recover any payment if, prior to the midnight deadline, it "(1) returns the item; (2) returns an image of the item, if the party to which the return is made has entered into an agreement to accept an image as a return of the item and the image is returned in accordance with that agreement; or (3) sends a record providing notice of dishonor or nonpayment if the item is unavailable for return." Subsection 4-301(d) provides that "[a]n item is returned: (a) as to an item received

through a clearing house, when it is delivered to the presenting or last collecting bank or to the clearing house or is sent to or delivered in accordance with these rules . . . ."

The undisputed facts here show that Seoul Bank received the draft on February 14, 2002 and returned it with notice of nonpayment to the New York FRB within 24 hours. The midnight deadline for Seoul Bank was midnight of February 15, 2002, the next banking day following the banking day when the Draft was received. Seoul Bank returned the Draft within this midnight deadline, so there is no basis for it to be held liable under §§ 4-301 and 4-302 of the UCC. Summary judgment on the Count VI claim will, therefore, also be granted in Seoul Bank's favor.

## CONCLUSION

For the reasons stated above, Fox River's motion for summary judgment is denied [#15] and Seoul Bank's motion for summary judgment is granted [#10]. The clerk is directed to enter judgment in favor of Seoul Bank. This case is terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 15, 2004